## STATE ex HOLLOWAY v RHODES

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3225. Decided Sept. 21, 1940

Willis Woehrle Metcalf, Columbus, for relator.

John L. Davies, City Attorney, Columbus, E. W. McCormick and Richard W. Gordon, Asst. City Attys., Columbus, for respondent.

## OPINION

**By BARNES, J.**

The above entitled cause is now being determined as an original action through a petition filed in this Court seeking a mandatory order against the respondent, requiring him to draw his warrant on the treasury of the City of Columbus, Ohio, to the order of the relator for the sum of $333.33.

The basis of relator's claim as set out in his petition, is substantially as follows:

That on the 18th day of December, 1939, the relator was duly employed as a special investigator, under the personal direction, control and supervision of the council of the City of Columbus, to assist in the investigation of gas rate expenditures, and to derive a clear and complete outline of the proceedings in connection therewith, and to furnish and secure information to assist said Council in an investigation of said gas rate expenditures, by the terms of the ordinance enacted by the said City Council as No. 450-39, and duly approved by the Mayor of said city on the same date, and effective as of the 18th day of January, 1940.

Relator entered on his employment under the terms and provisions of said ordinance on the 18th day of January, 1940, serving for thirty days, after which the City Council duly prepared and delivered to the respondent, James A. Rhodes, Auditor of said city, a voucher in the sum of $333.33, which was the salary allegedly due the relator for the services set forth. The respondent, James A. Rhodes, refused to draw his warrant on the treasury of said city, and thereafter followed this action in mandamus.

Respondent's answer admits his official position as Auditor of the City of Columbus and the passage of Ordinance No. 450-39, as alleged in the petition, but denies that such ordinance is valid, and alleges that the provisions thereof are contrary to and in viola-

tion of the charter of the City of Columbus; admits that Ordinance No. 450-39 was repealed, effective February 19, 1940; admits the refusal to draw his warrant on the treasury of the city, as alleged in the petition. Further answering, respondent denies each and all other allegations of the petition.

Respondent's answer further pleads that at the time of the passage of said Ordinance No. 450-39, Sections 3, 11, 33, 34, 37, 60, 63, 80, 81, 82, 83, 84 and 85 of the Charter of the City of Columbus, were and are now in full force and effect, and thereafter is set out the full text of the above sections.

The answer further alleges that the action of the City Council in the enactment and passage of said Ordinance No. 450-39, was in violation of the above referred to charter provisions and also in violation of §4211 GC, and further that Council had neither lawful authority nor power to employ relator as such special investigator. Further alleges that the services alleged to have been performed by relator were not legislative in character and not incident to any pending or contemplated legislation before Council and did not furnish a basis for legislative action relative to any matter upon which Council had the power to act, or within council's authority as a legislative body.

The answer further alleges that if it should be determined that the things proposed to be done by resolution of council about December 11, 1939, and that said Ordinance No. 450-39, are proper matters to be investigated by the Council or committee thereof, which respondent specifically denies, then said matters authorized and directed to be done by T. Blain Holloway as a special investigator, are under the provisions of said charter, an official function of the Auditor of the City of Columbus, a regular salaried officer of said city.

As a further alternative plea, it is averred that the City Council in attempting to employ relator did not comply with the charter provisions and rules of the Civil Service Commission of the City of Columbus, Ohio, as relevant to such employment and particularly charter sections 148, 149, 150 and 153, Rule I, paragraphs 5, 6, 12, 13 and 14; Rule III, sections 1, 2 and 4; Rule IV, Section 1; and Rule VII, sections 1, 2 and 4, which sections are set out in full in respondent's answer.

Relator's reply admits the existence of the charter provisions referred to in respondent's answer, but denies that the City Council, in the enactment or passage of said Ordinance No. 450-39, was in violation of said charter provisions or §4211 GC.

Sections 3 and 11 of the city charter are referred to and set out in full. The reply makes specific denials of numerous allegations of the answer.

The case is submitted on an agreed statement of facts and the briefs of counsel, oral argument being waived.

Printed copies of the charter of the City of Columbus and also a copy of the rules and regulations of the Municipal Civil Service Commission of the City of Columbus are attached to the agreed statement of facts as Exhibits 1 and 2, respectively, with the stipulation that each is a true and correct copy. It is further stipulated that all sections of the charter and all rules and regulations of the Civil Service Commission, as set out in the petition, answer and reply, are and have been at all times in full force and effect; that all exhibits attached to the answer and reply are true and correct copies of the documents of which they purport to be copies.

The agreed statement of facts is rather lengthy, and in the interest of saving time and space we refrain from making a full and substantive statement at this time. The essential facts will be referred to in logical order as they arise in the determination of the action.

Sometime in December, 1939, or earlier, the City Council of Columbus, Ohio, had under consideration the question of compensation of claims of engineer and his assistants employed by the City Attorney, under authority of Council, for the purpose of procuring expert information and data relative to certain utility rates. In early December the Council appointed a com-

mittee of its own members to make such investigation. On December 18, 1939, Ordinance No. 450-39 was duly enacted, which said Ordinance reads as follows:

"AN ORDINANCE No. 450-39—to authorize and direct the City Council to employ T. Blain Holloway, as a special investigator.

"Whereas, an emergency exists in the usual daily operation of the department of city council, in that it is immediately necessary to employ a special investigator to assist in the investigation of gas rate litigation expenditures and to derive a clear and complete outline of proceedings in connection · therewith, as stated in a resolution adopted by this council December 11, 1939; now, therefore,

"Be it ordained by the council of the city of Columbus:

"Section 1. That the city council be and it is hereby authorized and directed to employ T. Blain Holloway, as a special investigator, **under the personal direction, control and supervision of the City Council, to assist in the investigation of gas rate litigation expenditures and to derive a clear and complete outline of proceedings in connection therewith.** The compensation to be paid by the city of Columbus shall be $4,000 per annum, payable monthly, and said special investigator **shall serve during the pleasure of city council.**

"Sec. 2. Said compensation shall be paid monthly upon voucher approved by the city council from department No. 1, 010-C-44, other contractual services fund.

. "Sec. 3. That this ordinance shall take effect and be in force from and after the earliest period allowed by law.

· "Passed December 18, 1939.

"WYATT L. MILLIKIN,
President of Council.
Approved December 18, 1939.
Myron B. Gessaman, Mayor.
Attest: Helen T. Howard, City Clerk."

Relator's employment under said Ordinance started January 18, 1940, by repeal of the above-quoted Ordinance and the enactment of a second ordinance covering the same subject. The repeal of the first ordinance and the enactment of the second ordinance were at the suggestion of the Civil Service Commission, and to comply with Section 5 of Rule VII of the Civil Service Rules, which in effect provide that emergency appointments may not continue for a period of more than thirty days.

It is the claim and contention of counsel for respondent that Ordinance No. 450-39 was in violation·of the provisions of the charter of the City of Columbus and §4211 GC; that the Council of the City of Columbus had no authority to employ a special investigator to assist in the investigation of gas rate litigation expenditures; that the services performed by relator were not legislative in character; that the council in employing relator as special investigator failed to comply with the provisions of the charter of the City of Columbus, Ohio, and the rules of the Civil Service Commission relative to such employment.

Sec. 4211 GC reads as follows:

"4211. **Powers of council shall be legislative.** The powers of council shall be legislative only, and it shall perform no administrative duties whatever and it shall neither appoint nor confirm any officer or employe in the city government except those of its own body, except as is otherwise provided in this title. All contracts requiring the authority of council for their execution shall be entered into and conducted to performance by the board or officers having charge of the matters to which they relate, and after authority to make such contracts has been given and the necessary appropriation made, council shall take no further action thereon."

This section should be considered in connection with §4210 GC, which reads as follows:

"4210. **Officers of council.** Within ten days from the commencement of their term, the members of council shall elect a president protem, a clerk, and such other employes of council as may be

necessary, and fix their duties, bonds and compensation. The officers and employes of council shall serve for two years, but may be removed at any time for cause, at a regular meeting by a vote of two-thirds of the members elected to council." ·

It seems that §4210 contemplates that Council will have employes.

Sec. 4211 provides that Council shall neither appoint nor confirm any officer or employee of the city government except those of its own body.

The ten day provisions in §4210 GC for appointment and employment is directory only, and would not prevent the exercise of such power at a later date if and when a situation arises demanding it.

The provision of §4211 providing "the power of council shall be legislative only", will not be given a construction preventing a city council from employing assistants in the performance of their legal function, unless such employment is determined to be an abuse of discretion.

Regardless of legislation, the city council has an inherent power to make full and complete investigation on any matter coming within their operative function, whether in contemplation of future legislation or not. Where the nature of the investigation is such that the council needs competent or expert services in aiding them in determining their official duty, there should be no question that council has the inherent right to make such employment.

Section 11 of the city charter reads as follows:

"Sec. 11. Clerks and Employes. The council shall appoint a clerk, who shall be known as city clerk, and such other officers and employes of council as may be necessary. The city clerk shall keep all records of the council and perform such other duties as may· be required by this. charter or by council. Such clerk shall serve during the pleasure of the council. Council shall exercise no power of appointment except as herein expressly provided."

Section 33 of the city charter reads as follows:

"33. Investigation by council. The council, or any committee thereof duly authorized by the council so to do, may investigate the financial transactions of any office or department of the city government and the official acts and conduct of any city official, relative to any matter upon which the council may act; and by similar investigation may secure information upon any matter within its authority as a legislative body."

While Section 33 makes no specific reference to employment of assistants in making their investigation, yet we think that the last clause of the section, to-wit, "and by similar investigation may secure information upon any matter within its authority as a legislative body", taken in connection with §11 heretofore quoted in full, and the implied powers which we determine are possessed by Council, would authorize the employment of relator as a special investigator to aid in the performance of its legal function.

The council by legislative enactment had provided for employment of experts for the City Attorney, had made appropriations for the pay of such experts and had provided for the salaries on a per diem basis.

The subject matter of the investigation being made by council comes within the express terms of said §36 of the City Charter.

Respondent makes the further claim that the work provided to be done by relator as special examiner was a part of the duties of the City Auditor, and therefore that the Council would have no right to remove the performance of this service from the department to which it belonged. We are unable to agree with this contention of counsel for respondent. It is true that certain data would be obtained from the department of the City Auditor, but the

scope of the investigation would necessarily go far beyond the prescribed duties of this department.

Furthermore, the authority authorizing council to investigate all departments of the city government would include the City Auditor, as well as any other department from which it might be determined the proper action of council on the subject being investigated.

Respondent through his counsel makes the further claim that the City Council failed to observe and follow the Civil Service provisions and rules in their attempted employment of the relator, §148 of the City Charter provides for Civil Service classification. Among other things this section stated that the city is divided into the unclassified and classified service. The relator, under the express language of this section, would not come under the unclassified service. All employes or appointees not under the unclassified service are within the classified service. The classified service is again divided into the competitive class and the non-competitive class. The non-competitive class consists of the positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional or educational character as may be determined by the rules of the Commission.

Under §149, ¶1, of the charter provisions, it is provided that the Commission shall prescribe rules and so forth "for noncompetitive examination for appointment to positions requiring technical and exceptional qualifications of a scientific, managerial, professional or educational character."

Section 9 of Rule V of the Civil Service Commission provides for non-competitive examinations.

Another pertinent provision is found under Rule VII, §5, which reads as follows:

"**Section 5. Temporary appointments.** When an emergency arises such that in order to prevent the loss of public property, serious inconvenience to the public, or damaging delay to the public service, one or more persons must be employed without the delay incident to regular certification and appointment, and appointing authority may, without consulting the Commission, appoint a qualified person or persons during the period of emergency, but in no such case for a period exceeding thirty (30) calendar days. Temporary appointments with the reasons therefor, shall be immediately reported to the Commission, which reserves the right to inquire into the qualifications of the temporary employe, nature of the emergency and to disapprove of appointment or compensation to such appointee if it is found not to be an emergency, or if the employee is found to be unqualified for the position. In no case shall the merit principle be evaded by successive emergency appointments to the same position."

Counsel for relator claims that this is the section under which Council acted and provided for the employment of relator as special investigator.

Under the agreed statement of facts, on page 2, we find the following:

"Council, as the appointing authority, found that an emergency had arisen and that in order to prevent loss of public property, inconvenience to the public and damaging delay to public service, employed the relator as a Special Investigator to serve at the pleasure of council and at an annual salary of $4,000.00, and that after Ordinance No. 450-39, which authorized the employment of a Special Investigator, had been passed, and after the relator's appointment had been made, and after the relator entered upon his duties as such Special Investigator, Earl Baird, member of the Civil Service Commission of Columbus, Ohio, after consideration of Ordinance No. 450-39 informally raised a question as to the right of Council to name the Investigator in the Ordinance."

Counsel for respondent urge that this section was not complied with in the following particulars:

First, that the employment was not temporary, but was at the will of Coun-

cil at a salary of $4000.00 per year, payable monthly, with the further provision, "such special investigator shall serve during the pleasure of the city council".

Relator's employment in fact extended from January 18 to February 18, and on the latter date the ordinance providing for his employment was repealed, and a second ordinance enacted intending to comply with other provisions providing for Civil Service employes.

It is our conclusion that the City Council by repealing Ordinance No. 450-39 thereby limited the employment to thirty days. While it would have been more appropriate to have so stated in the ordinance rather than providing that the service should be at the pleasure of Council, yet we think it is proper to say that the employment was temporary and for a period of thirty days.

It is further contended by counsel for respondent that that part of Section 5 requiring immediate report to the Commission of such temporary employment with the reason therefor was not complied with. On page 2 of the agreed statement of facts it appears that following the passage of Ordinance No. 450-39, which authorized the employment of the Special Investigator, and after relator's appointment had been made and after relator had entered upon his duties as such Special Investigator, Earl Baird, a member of the Civil Service Commission of Columbus, Ohio, informally raised the question as to the right of council to name the investigator provided for in said ordinance. The date upon which Mr. Baird informally raised the question of council's right to name the investigator under the ordinance is not given. However, the following paragraph of agreed statement of facts states that thereafter Council, through two of its members, Mr. Addison and Mr. Alexander, appeared before the Civil Service Commission of Columbus, Ohio, at the regular February 1, 1940 meeting, and orally reported the appointment by Council of T. Blain Holloway as Special Investigator under Ordinance No. 450-39, and the reasons therefor. It is further stipulated that the Civil Service Commission at that time, as disclosed by its minutes, suggested that Council pass an ordinance creating such position and then that a provisional appointment should be made to fill the position thus created; that at such meeting, although not disclosed by the minutes, the Commission informally and orally approved the qualifications of the relator but did not officially approve relator's qualifications and did not officially approve or disapprove the appointment of relator as Special Investigator.

It is our determination that the fact that Council did not immediately notify the Civil Service Commission sion of the employment of relator on the date of the passage of the ordinance, or on the date that he entered upon his employment, was not vital, since this is a mere ministerial requirement and time is not necessarily determinative. The Commission were notified on February 1, before the expiration of the term of employment. Upon the date named the Commission informally and orally approved the qualifications of relator, although it did not officially so do. The portion of Rule VII, §5, which we are now considering, does not require the Commission to act. It merely provides that the Commission re- serves the right to inquire into the qualifications of a temporary employe, nature of the emergency and to disapprove the appointment or compensation to such appointee if it is found not to be an emergency or if the employe is found to be unqualified for the position. The Commission not having affirmatively found any objections other than a recommendation that a new ordinance be enacted at the expiration of the thirty days, it is our conclusion that the employment was legal.

We do not find it necessary to discuss the position of counsel for relator that the City Council had the right to employ relator independently of Rule VII, §5. The theory advanced and the cases cited are in a measure supporting,

but there seem to be some distinguishing features and we prefer to predicate our determination of the legality of employment under Rule VII, §5, of the rules of the Civil Service Commission.

The writ of mandamus will be allowed and respondent ordered to issue his warrant to the order of the relator as prayed for in the petition.

Exceptions will be allowed to respondent.

HORNBECK, PJ. & GEIGER, J., concur.